Good morning. May it please the court, I'm Janet Pumphrey for Alex Holmes. I'd like to start with a standard of review. In my brief I argued that the district court's dismissal of a habeas claim is de novo review. And the respondent argues that a finding of equitable tolling is reviewed for abuse of discretion. That's absolutely correct. But even under this more rigorous standard, equitable tolling should have been found. The district court wouldn't allow equitable tolling and dismiss the petition as untimely only on the basis of the first two of the six factors that I've set out in my brief. Reasonable due diligence, extraordinary circumstances. He diligently pursued his state court remedies. He believed his rule 29 had been properly filed. There was no, the prosecution would suffer no prejudice because he's already paroled. He's really only looking for a, a vacate, vacate the parole. And the petitioner's habeas case has significant merit. On the issue of reasonable diligence, the district court found that his lack of action to research his legal status for two years after the filing of his petition, which I take it to mean his rule 30 petition, precluded a finding of even reasonable diligence. In his credible testimony, Holmes explained in 1998 to the time that he filed his motion to withdraw the plea in 2000, he believed to be brought back to court on his motion to revise and revoke and that his sentence would be reduced. Well, how can that be taken as credible? Because I understand the claim was, or at least the first version of the claim was, that if he pleaded as he did, he would be brought back for a resentencing, either at the behest or certainly with the agreement of the government. That's right. In about 30 days. That's right, and he wasn't. If 30 days is the time when a sentence as serious as this is going to be reviewed, and he sits there for another year and 11 months, doesn't that look like foot dragging? I think, I don't believe it is foot dragging. For one thing, he was completely uneducated in the law. He was depending upon his attorney. He can count, Connie, 30 days versus 2 years? Well, he believed that he was being brought back under the revise and revoke, which he filed per se. His lawyer told him within weeks of the sentencing that he had not yet talked to the prosecutor, and then Holmes learned on his own that his revise and revoke had to be filed within 60 days, so he filed it himself. Also, if you look at the defense counsel's May 11, 2003 letter, it basically corroborates everything that Mr. Holmes said, that the prosecutor suggested this and the prosecutor, he depended on the prosecutor and he depended on his attorney to get him back into court. It was not something he could have done on his own. It just didn't happen. He basically, it was just a happenstance of his being in the law library one day, and his friend told him that his mandatory sentence couldn't be revised and revoked. So I think that... Counsel, when the majority in the earlier appeal decided to send this back to explore equitable tooling, one of the things that we were concerned about was the possibility that perhaps some government official in some way had misled him into thinking that what he had done was timely and that it would preserve his rights. The district court looked at that and found no such, no government official in any way was involved in misleading him. That was also important to the district court's conclusion. That's right. And I think Mr. Holmes, the prison system, this is the way it happened then, is that he went to the law library, got the blank, he was given the blank form, which are given to all prisoners, it's just a form, the affidavit is just a form, and he filed it. And under the practice, as I argued before, when I was before you before, under the practice then, he believed it was adequate. Lawyers believed it was adequate and it wasn't until that case came down that it was determined not to be adequate. And your earlier decision in the Holmes case was so thoughtful, I can remember standing before you and you asked, well, if what Mr. Holmes did was adequate, then wouldn't the filing of a Verizon revoke say the habeas process indefinitely? And it would, absolutely would. But in this case, the equitable tooling, he just didn't know and he depended on, if there's government interference, it's the prosecutor who never came back to him, never came back to the lawyer, and he believed that that was going to happen. And he believed it for two years. And then as soon as he learned it couldn't possibly happen because it was a mandatory sentence, he filed the Rule 30 motion and he stopped the habeas clock at that point. Those extraordinary circumstances are that he was, it was almost a lulling, he was lulled into believing that this was going to happen and it just didn't. And there's nothing really that he could have done to make it happen. He couldn't have gone back to court himself. Well, who, who lulled him into believing that? Um, his... What government, what... Well, it wasn't, certainly it wasn't... Oh, go ahead. No, I was going to say, what, again, what government official played some role into lulling him into this belief that what he had done was all that was required to protect his rights? Well, it certainly wasn't the prison. I mean, I think that's what you were looking for. Yeah. They gave him a blank form. He filled it out. He... He asked for it. He asked for it. But he did not offer it as sort of a routine, suggesting that pursuant to that routine, that would imply that this would take care of the problem. He, he went and asked for it and was only, was only given to him when he took the step to ask for it. I think it... That's what the district court found. I think, I think the practice was that they are kind of all given it, but he didn't, he did ask for it. He testified that he asked for it. And they gave him a blank form and gave him no advice whatsoever. They weren't supposed to give him advice. Right. But if there was a government, if there was government interference, it was only his, his reliance and, and lulling, his reliance upon what his lawyer was telling him and what the lawyer was, and what the prosecutor had suggested, which was untenable in the law. It could not have, it was, it was illegal. So to the extent that there was government interference, I would suggest that that was it. And then also, he, he had very little access to the, to the library. He testified to that. There were a thousand prisoners at MCI Concord. Only 20 could use the library at any given time. It was a 21 hour a day lockdown. His... So between the affirmative misleading by his lawyer and by the prosecutor, and the limited access to the library, there was really nothing that he could have done. And those were extraordinary circumstances outside of his control. Let's see. He diligently pursued his, his state court rights. He filed a motion to revise and revoke pro se, and as soon as he learned that he, that he had to file the Rule 30, he filed the Rule 30 immediately in 2000, as soon as he learned that fact, and he testified credibly to that. He believed that the Rule 29 was properly filed, and I mean, this court has said in the previous decision, even assuming that Holmes had availed himself of every opportunity to conduct research in the prison library, it's by no, no one means clear that he could have ever discovered that the petition was not properly filed. It's just not something he would have gone to the library to look up himself because he believed he had done it correctly. So I'll reserve two minutes if I may. Thank you. May it please the court, Christopher Hurrell on behalf of the respondents. The district court did not abuse its discretion in denying equitable tolling in this matter. Equitable tolling is the exception rather than the rule and is only available in rare circumstances in which a petitioner is pursuing his remedies diligently and also where there is some extraordinary circumstance that prevents him from filing his habeas petition on time. Petitioners fail to carry his burden of proof for either of the prongs of this test. Before turning to the specific prongs of the test, though, I want to talk about the factual basis that's being offered now that underlies the argument by petitioner on both prongs. That's the existence of this secret plea deal by which the petitioner says he was going to be brought back into court 30 days later. The state court, the motion court, reviewed this and found that there was no merit to the allegation. The appeals court held that this allegation regarding the secret plea deal rested entirely on Mr. Holmes' credibility and rejected it as well. Under 28 U.S.C. section 2254E1, in a habeas proceeding, if a state court has made a determination of a factual matter, this court accepts that as true unless the petitioner offers clear and convincing evidence to the contrary. The first time this case was before you, the petitioner did not do so. The petitioner had the opportunity to do that at the evidentiary hearing at the district court. The petitioner continued not to offer the sort of clear and convincing evidence that you would need to overturn the state court's factual finding when it comes to that. Because that factual underpinning is the basis of both of the petitioner's arguments under both prongs, that alone is fatal to his equitable tolling argument. And I'd like to turn that even if you accept the petitioner's version of events that there was a secret, unwritten plea deal, Justice Souter, it's much worse than just one year and 11 months that passed. May 1st of 1998 is the guilty plea. June 12th of 1998 is the Rule 29 motion. And just very briefly, with regard to whether the Rule 29 motion was filed correctly at the time, the practice that's being discussed and that was discussed by this court the first time the case was here, is what a prisoner is to do if he has not yet discovered the reasons for which he will file his motion to revise and revoke. If you accept what the petitioner says factually, and you shouldn't, but even if you were to do that, the petitioner knew what his reasons were at the time that he filed the petition. So there would be no reason for him to not be able to include that information. August 14th of 2000, when the petitioner supposedly learns that he can't use a revise and revoke to reduce his second-degree murder charge, there's the motion to withdraw the guilty plea. Nowhere in the motion would he withdraw the guilty plea two years after he pled guilty, roughly 25 times the amount of time after which he was supposedly going to be brought into court and have his sentence reduced. That motion does not mention this now keystone issue, that there was a secret plea deal. It's not until December 31st of 2002, which is more than four years after the petitioner says he expected to be brought back in to have his sentence reduced, that there's correspondence between the petitioner and his counsel regarding this issue. And it's not until August 10th of 2004, which is now six years after he supposedly expected to be brought back in to have his sentence revised and revoked, that this claim was presented to the state court for the first time. And all of that feeds into the diligence problem. The petitioner simply could not have been found to be diligent because he did nothing for the two years. He didn't call his counsel and say, why haven't I been brought in yet? Didn't contact the court to say, why haven't I been brought in yet? Moving on to the extraordinary circumstances issue. At the district court, the extraordinary circumstances that were presented were what this court had discussed the first time the case was before. Was the behavior of the library and the prison officials. Wasn't extraordinary. The petitioner sought out, although the story has changed as far as how the Rule 29 motion was filed, the petitioner testified that he sought it out because his lawyer told him that's what you had to do. So he sought it out, got it, filed it, was never provided any legal advice, wasn't repeatedly misled about the status of it, wasn't told anything legally when it came to it. The extraordinary circumstances that are presented here on appeal now are three, and they're different than what was presented to the district court. Is the affirmative misleading by the prosecutor, which never happened. The affirmative misleading by the defense attorney, which also never happened. And then there's the library access issue. So the first two, the affirmative misleading, suffer from the same factual problem that we discussed under 2254E. It's already been ruled on by the state court, there's not clear and convincing evidence to the contrary. In addition, the evidence that is actually, the independent documentary evidence that is here, contradicts the petitioner's argument. The letters the petitioner has had on one lone sort of ambiguous mention of the possibility of the revise and revoke. The other two letters that we cite in our brief at pages A126 and A236 make it clear that the prosecutor was not the one that came and did any misleading here. The petitioner himself was the one that said, hey, if I plead guilty, is there a possibility of this later on? And the letters from the plea counsel to the petitioner and to his new counsel illustrate that. Unless there are any other questions, your honors, we rest our honor brief. Thank you. Thank you. Just one point. If you look at defense counsel's letters, they start with May 11, 2003, and they go on to, it's at least through that year. They go on to, it's through that year. In the May 11th letter, which is the closest, I think, to the actual circumstances of the plea, the defense counsel says clearly, we did discuss, during the plea negotiations in their case, we did discuss the possibility of revise and revoke should the prosecutor want your information. That was mentioned by the district attorney handling the case. And again, reported to you, the possibility mentioned by the district attorney. I would suggest that this is the most crucial letter of defense counsel's, because as you read the letters, he's becoming increasingly annoyed with Mr. Holmes, and he's getting farther away from the actual plea negotiations themselves. I would suggest that this corroborates Mr. Holmes' testimony. Thank you. And I'll rest my brief with the rest. Thank you.